UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| CAROLYN WALLER | ) |
| --- | --- |
| *Plaintiff*, | ) |
| v. | ) Case No. 4:05-cv-66 |
| JACOBS ENGINEERING GROUP, INC. | ) Judge Mattice |
| *Defendant.* | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion for Summary Judgment. Defendant seeks summary judgment on Plaintiff's employment discrimination and retaliation claims under the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), and analogous provisions of the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101 to 1004 ("THRA").

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the

credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may bear this burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply " 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907.

If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II. FACTS

The facts, taken in the light most favorable to Plaintiff, are as follows.

Plaintiff is over forty years old, and is an employee of Defendant. Initially, Plaintiff worked as a System Specialist. (Court Doc. No. 16-2, 3, 4, Pl.'s Dep. 14.) In 2002, Plaintiff was promoted to Telecommunications Support Manager. (*Id.* at 20-22.) In addition to her regular duties as a System Specialist, this position involved supervisory responsibility. (*Id.* at 28-29).

In April of 2003, Plaintiff required heart bypass surgery, and took on medical leave for twelve weeks (*Id.* at 31, 34.) On returning to work, Plaintiff discovered that Mr. Campbell became her new supervisor. (*Id.* at 35.) Over the next several months Plaintiff received criticism from Mr. Campbell. (*See id.* at 42-51.) One such incident included Mr. Campbell remarking that "I know you're on a lot of medication, and I'm just not sure you can do your job." (*Id.* at 67.)

In September of 2003 Plaintiff complained about Mr. Campbell to Defendant's human resources department. (*Id.* at 69-70.)

In May of 2004, Mr. Campbell and his supervisor, Mr. Schexnayder, met with Plaintiff to conduct a written performance review. (*Id.* at 92.) This review rated Plaintiff in a number of areas on a scale of one to five. (*Id.* at 67; Court Doc. No. 16-8, Pl.'s Performance Review.) An overall score of two indicates that the subject's performance was "below expectations," while an overall score of three means that the subject "meets expectations." (Pl.'s Performance Review.) Plaintiff received an overall score of 2.4. (*Id.*)

In reaction, Plaintiff voiced her disagreement with the rating assigned to her. (Pl.'s Dep. 93.)

Also at this meeting Messrs. Campbell and Schexnayder informed Plaintiff that they were going to transfer her to the position of Telecommunications Invoice Manager, where she would receive a two percent raise. (*Id.* at 98-99.) In this position, Plaintiff was tasked with reviewing and auditing Defendant's telecommunications contracts, which were worth between 15 and 20 million dollars per year. (*Id.* at 99-101.) Mr. Schexnayder emphasized to Plaintiff that he viewed the Telecommunications Invoice Manager position as an important one. (*Id.* at 102-03). Plaintiff was dissatisfied with the transfer, at least in part, because she would be supervised by a former coworker. (*Id.* at 102-03.)

In July of 2004 Defendant transferred Plaintiff to the Telecommunications Invoice Manager position. (*Id.* at 108-09.) Ms. Frasier–who was also over forty years old–assumed Plaintiff's previous duties. (Court Doc. No. 16-5, Campbell Dep. 23-24.)

## III. ANALYSIS

Where, as here, an employee's disability discrimination, age discrimination, and retaliation claims are based on circumstantial rather than direct evidence, the Court applies the burden-shifting analysis initially described by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004) (ADA); *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1464 (6th Cir.1990) (ADEA); *Miller v. City of Murfreesboro*, 122 S.W.3d 766, 776 (Tenn. Ct. App. 2003) (THRA).

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff

succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (alteration in original) (quoting *Burdine*, 450 U.S. at 253). It is under this evidentiary framework that the Court evaluates Plaintiff's ADA, ADEA, and THRA claims.

To establish a *prima facie* case of either discrimination or retaliation under the ADA, the ADEA, or the THRA, Plaintiff must demonstrate, *inter alia*, a materially adverse employment action.[1] *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004) (ADEA discrimination); *MedCentral Health Sys.*, 366 F.3d 412, 417 (6th Cir. 2004) (ADA discrimination); *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir.2002) (ADEA retaliation)*; Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir.1997) (ADA retaliation); *Bruce v. W. Auto Supply Co.*, 669 S.W.2d 95, 97 (Tenn. Ct. App. 1984) (THRA). The term "materially adverse employment action," as used in either the ADEA or the ADA context, is substantially similar. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876,

---

[1] Although a plaintiff may instead demonstrate severe or pervasive retaliatory harassment to establish a *prima facie* case of retaliation, *Morris v. Oldham County*, 201 F.3d 784, 791-92 (6th Cir. 2000), the Plaintiff here neither alleges nor points to evidence to support a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted).

885 (6th Cir. 1996) ("With respect to [the issue of materially adverse employment actions], we refer to analogous cases decided in the context of age and sex discrimination, because cases involving the ADEA and Title VII are instructive in cases involving the ADA."). Likewise, the THRA adopts an identical standard. *See Bruce*, 669 S.W.2d at 97. Accordingly, the Court will address this aspect of Plaintiff's ADEA, ADA, and THRA claims simultaneously.

To determine whether an employment action was materially adverse, the Court considers whether an employee suffered " 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.' " *Id.* at 886 (quoting *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). The United States Court of Appeals for the Sixth Circuit has made clear that an unfavorable performance evaluation is not, in and of itself, an adverse employment action. *See Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999) (holding that an unfavorable evaluation without an accompanying adverse employment action is not actionable as a Title VII retaliation claim); *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999) (holding that a negative performance evaluation did not constitute an adverse employment action without "evidence to show that the lowered performance ratings actually had an effect on [the plaintiff's] wages such that a court may conclude that there was a materially adverse employment action.").

In the instant case, Plaintiff asserts that her May of 2004 performance review followed by her transfer to Telecommunications Invoice Manager comprise an adverse employment action. Importantly, Plaintiff does not allege that her May of 2004 evaluation

and subsequent transfer led to a decrease in pay. She was, in fact, given a two percent raise shortly after the evaluation. Instead, Plaintiff apparently argues that her subsequent transfer to Telecommunications Invoice Manager saddled her with "significantly diminished material responsibilities . . . ." *Kocsis*, 97 F.3d at 886 (internal quotations omitted).

Notably, "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Id.* at 885. To demonstrate that her transfer is actionable, Plaintiff must show facts that would cause a reasonable person to consider the transfer materially adverse. *Burlington N. and Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2417 (U.S. 2006) (quoting *Oncale v. Sundowner Offshore Servs, Inc.*, 523 U.S. 75, 81 (1998)). Plaintiff, however, does not put forth any evidence that the Telecommunications Invoice Manager position was, for example, less desirable, more difficult, or less prestigious than her former position. *See id.* Accordingly, Plaintiff fails to carry her burden under *Celotex* to present significant, probative evidence indicating the necessity of a trial to determine whether the transfer was materially adverse, and, in turn, whether she suffered a materially adverse employment action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[2]

---

[2] In response to Defendant's Motion for Summary Judgment, Plaintiff offers no evidence–compliant with Fed. R. Civ. P. 56(e) or otherwise–to support her argument that a genuine issue of material fact exists. Instead, Plaintiff offers the general argument that where, as in the instant case, the outcome hinges on issues of witness credibility, motive, and intent, summary judgment is improper. Plaintiff's argument, however, is inapposite. The Court need not discern credibility, intent, or motive in ruling on Defendant's motion. The Court is simply presented with a situation in which Defendant pointed out to the Court that Plaintiff lacks evidence to prove her case, and Plaintiff obliged Defendant's argument by failing to offer any evidence whatever.

Notwithstanding that the instant motion can be decided on Plaintiff's failure to carry her burden of production after Defendant satisfied its initial burden under Rule 56, Plaintiff's argument is incomplete. In addressing the testimonial evidence and summary judgment, the Sixth Circuit Court of Appeals remarked:

In *Reeves* [*v. Sanderson Plumbing Products*, 530 U.S. 133 (2000)], the Supreme Court held that trial courts considering summary judgment "should give credence to the

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment [Court Doc. No. 14] is **GRANTED**. Plaintiff's Complaint [Court Doc. No. 1] shall be **DISMISSED WITH PREJUDICE**.

SO ORDERED this 10th day of October, 2006.

                                        *s/ Harry S. Mattice, Jr.*
                                        HARRY S. MATTICE, JR.
                                    UNITED STATES DISTRICT JUDGE

---

evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.' " *Id.* at 151 (emphasis added, quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2529 at 300 (2d ed. 1995)). In fact, *Reeves*–read in the context of the authority cited by the Supreme Court and other unchallenged Supreme Court precedents–does not require the exclusion of all interested party testimony. At summary judgment, the judge may consider all "evidence [favorable to the movant] that the jury is required to believe." Wright & Miller, *supra*, § 2529, at 299. Such evidence includes "uncontradicted and unimpeached evidence from disinterested witnesses," but under some circumstances even the testimony of an "interested witness . . . must be believed." Wright & Miller, *supra*, § 2527, at 287-88. In particular, "[t]he testimony of an employee of the [movant] must be taken as true when it disclosed no lack of candor, the witness was not impeached, his credibility was not questioned, and the accuracy of his testimony was not controverted by evidence, although if it were inaccurate it readily could have been shown to be so." Wright & Miller, *supra*, § 2527, at 287 n. 9 (citing *Chesapeake & Ohio R.R. v. Martin*, 283 U.S. 209, 216, 51 S.Ct. 453, 75 L.Ed. 983 (1931)).

*Smith v. Honda of Am. Mfg., Inc.*, 101 F. App'x 20, 24-25 (6th Cir. 2004) (second alteration in original). Plaintiff fails to identify, and the Court does not find, any of the indicia cited above that would cast doubt on Defendant's employees' testimony. Accordingly, the Court could properly consider Defendant's employees' testimony.